662 S.E.2d 410

**Jeremy TISDALE, Petitioner,**

v.

**STATE of South Carolina, Respondent.**

**No. 26495.**

Supreme Court of South Carolina.

Submitted April 16, 2008.

Filed May 27, 2008.

Rehearing Denied June 25, 2008.

Appellate Defender Robert M. Pachak, of South Carolina Commission on Indigent Defense, Division of Appellate Defense, of Columbia, for petitioner.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, and Assistant Attorney General Matthew J. Friedman, all of Columbia, for respondent.

Justice MOORE.

Petitioner was convicted of murder and sentenced to life without parole. His direct appeal was dismissed after an *Anders* review.[1] Petitioner then filed this application for post-conviction relief (PCR) claiming counsel were ineffective for failing to request a charge on accident or involuntary manslaughter. PCR was denied. We reverse.

---

1. *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).

### FACTS

The victim in this case was Lavelle Anderson (Victim). His decomposing nude body was found in a ditch in Berkeley County on October 2, 2000. He had been shot twice in the head.

Petitioner and his co-defendant, Anthony Dawson, were charged with murdering Victim on September 27 and disposing of the body. The State's theory of the case was that Victim's murder was revenge for the killing of petitioner's brother in a drive-by shooting a few days earlier.

At trial, Dawson testified for the State. He stated that after the wake for petitioner's brother, he and petitioner picked up Victim in a borrowed car. Dawson was reclined in the backseat because he had a headache, so Victim got in the front seat. As they drove down the interstate, Dawson heard petitioner and Victim talking but could not hear their words until their voices became raised. Victim began yelling and called petitioner a "bitch." Victim then punched petitioner in the face. Petitioner pinned Victim against the passenger side of the car and was pulling the car onto the shoulder of the road when Victim pulled a gun and shot at petitioner. Petitioner and Victim fought over the gun and one or two shots were fired. Dawson stated he did not know who had the gun when the shots were fired, but he saw the gun in petitioner's hand after the shooting. Petitioner and Dawson put Victim's body in the trunk of the car and drove to a friend's house for help disposing of the body.

Petitioner testified he picked up Victim because Victim had called him asking for a favor. After Victim was in the car and stated where he wanted to go, petitioner did not want to do it. Victim then began yelling and punched petitioner in the face. When petitioner saw Victim pull a gun, they struggled over the weapon. The gun went off while it was still in Victim's hand and then Victim was still. On cross-examination, the solicitor asked: "Your testimony is that that gun was never in your hand?" Petitioner answered: "It was never in my hand until he was just motionless."

During closing, the solicitor argued:

[T]hey want you to believe that this was an accident. It is not self-defense. It is not voluntary manslaughter. And it

is not involuntary manslaughter. They want you to believe that it was an accident and it is not murder. No evidence supports that it was anything other than an intentional act.

The trial judge charged voluntary manslaughter as a lesser offense and self-defense. On PCR, petitioner claimed counsel were ineffective for failing to request charges on accident and involuntary manslaughter.

At the PCR hearing, Counsel Brown testified he was surprised by petitioner's testimony that the gun was in Victim's hand and not petitioner's when it fired. It did not occur to counsel to request a charge on accident or involuntary manslaughter. Co-counsel confirmed that there was no discussion of accident or involuntary manslaughter.

The PCR judge found the fact that Victim was shot twice "in the back of the head" [2] was completely inconsistent with either accident or involuntary manslaughter and therefore counsel were not ineffective in failing to request these charges.

## ISSUE

Were counsel ineffective for failing to request charges on accident and/or involuntary manslaughter?

## DISCUSSION

Involuntary manslaughter is a lesser included offense of murder only if there is evidence the killing was unintentional. *State v. Pickens*, 320 S.C. 528, 466 S.E.2d 364 (1996).[3] Evidence of a struggle between the defendant and the victim over a weapon supports submission of an involuntary manslaughter charge. *Casey v. State*, 305 S.C. 445, 409 S.E.2d 391 (1991). Here, there is evidence of a struggle over

---

2. A pathologist testified at trial that the bullet wounds were to the left side of the head slightly behind the ear.

3. Involuntary manslaughter is the killing of another without malice and unintentionally while engaged in either: (1) an unlawful act not amounting to a felony and not naturally tending to cause death or great bodily harm; or (2) a lawful act with reckless disregard for the safety of others. *State v. Reese*, 370 S.C. 31, 633 S.E.2d 898 (2006).

the gun. The fact that Victim's wounds may have been inconsistent with petitioner's testimony that the gun fired while in Victim's hand is not overwhelming evidence that petitioner intentionally killed Victim.

■ Without citation of authority, the State argues that because the jury rejected petitioner's claim of self-defense and found him guilty of murder, the jury must have found malice and therefore petitioner cannot show prejudice from the failure to submit involuntary manslaughter.[4] We disagree. The State's argument essentially suggests that if a defendant is found guilty of the greater offense, he can never challenge the failure to submit a lesser offense because the jury must have found all the elements of the greater. To the contrary, the relevant test is whether there is *any* evidence that the defendant committed the lesser rather than the greater offense. *Casey v. State, supra.* Here, the evidence of a struggle for the gun supports submission of a charge of involuntary manslaughter.

■ Further, evidence of an accidental discharge of a gun will support a charge of accident where the defendant lawfully arms himself in self-defense. *State v. Burriss,* 334 S.C. 256, 513 S.E.2d 104 (1999); *see also State v. Cameron,* 137 S.C. 371, 135 S.E. 364 (1926) (approving charge of accident where gun accidentally discharged during struggle). Here, the evidence indicates Victim was the aggressor by punching petitioner in the face and then shooting at him. This evidence, along with evidence the gun discharged accidentally, supports a charge of accident.

The denial of PCR is **REVERSED.**

TOAL, C.J., WALLER, PLEICONES and BEATTY, JJ., concur.

---

4. We rejected this analysis in the context of murder and *voluntary manslaughter. State v. Lowry,* 315 S.C. 396, 434 S.E.2d 272 (1993).