Ronald Francis SMART,
Petitioner–Appellee,

v.

William D. LEEKE, Commissioner, South Carolina Department of Corrections; Attorney General of South Carolina, Respondents–Appellants.

No. 87–7737.

United States Court of Appeals,
Fourth Circuit.

Argued April 5, 1988.

Decided Sept. 6, 1988.

Rehearing In Banc Granted Oct. 27, 1988.

Donald J. Zelenka, Chief Deputy Atty. Gen., Columbia, S.C., for respondents-appellants.

David I. Bruck (Bruck & Blume, Columbia, S.C., on brief), for petitioner-appellee.

Before PHILLIPS, MURNAGHAN and WILKINS, Circuit Judges.

MURNAGHAN, Circuit Judge:

Here we are presented with a principle of law revisited. Ronald Francis Smart was tried for murder in a state court of South Carolina and was convicted and sentenced to death. While the conviction was affirmed by the South Carolina Supreme Court, the death sentence was vacated. Resentencing led to two consecutive terms of life imprisonment. The crime for which Smart had been charged was causing death wrongfully without legal excuse or justification.

Smart in his defense pleaded self-defense and introduced sufficient evidence to put self-defense in issue.

The case resembles in some very similar respects the case of *Griffin v. Martin*, 785 F.2d 1172 (4th Cir.1986), rehearing *en banc* granted, 795 F.2d 22 (4th Cir.1986). The district court's denial of the writ of *habeas corpus* in that case, though the writ had been granted at the panel level, was affirmed by an equally divided vote of the Fourth Circuit, 795 F.2d 22 (4th Cir.1986) (the panel opinion having been vacated by the rehearing grant). A petition for *certiorari* to the United States Supreme Court was denied, 480 U.S. 919, 107 S.Ct. 1376, 94 L.Ed.2d 691 (1987). Therefore, the panel decision in *Griffin v. Martin* has no

**610**

precedential authority but may be referred to as an indication of what the law is wherever it is found to be persuasive. In *Griffin v. Martin* at the panel level the burden of finding the absence of self-defense beyond a reasonable doubt was placed on the prosecution.

Since the panel decision in *Griffin v. Martin*, there have been subsequent developments which bear quite directly on the issues presented in the present case. The Supreme Court of the United States has announced its decision in *Martin v. Ohio*, 480 U.S. 228, 107 S.Ct. 1098, 94 L.Ed.2d 267 (1987), and the Supreme Court of South Carolina has announced its decision in *State v. Bellamy*, 293 S.C. 103, 359 S.E.2d 63 (1987).

From *Martin v. Ohio*, we learn that, where all the ingredients of the crime are proven, and where the statute does not require rebuttal by the prosecution of self-defense, the self-defense is affirmative in nature and the burden by preponderance of the evidence may be placed on the defense. From *State v. Bellamy*, we learn that in South Carolina self-defense is no longer an affirmative defense. A defendant seeking to rely on self-defense need merely produce evidence which may cause a reasonable doubt in the minds of the jury as to the presence of that element. 293 S.C. at 105, 359 S.E.2d at 64–65. Thereupon self-defense enters the case, and the burden is assigned to the prosecution to prove absence of self-defense beyond a reasonable doubt. That new principle of South Carolina law, while it may contradict the earlier law on the subject, does not, of itself, render the old law unconstitutional. *State v. Glover*, 284 S.C. 152, 154, 326 S.E.2d 150, 151 (1985), *cert. denied*, 471 U.S. 1068, 105 S.Ct. 2147, 85 L.Ed.2d 503 (1985). The new law is applied to all cases tried subsequent to the date of *State v. Davis*, 282 S.C. 45, 317 S.E.2d 452 (1984). *Glover*, 284 S.C. at 154, 326 S.E.2d at 151. The instant case was tried in 1981, well before the 1984 decision in *Davis*.

■ The crucial question confronting us then is whether, in a South Carolina trial before 1984, an instruction which placed upon a defendant who had put self-defense in issue the burden to prove it by a preponderance of the evidence violated due process under the Federal Constitution. Under South Carolina law, an absence of self-defense is an essential element of the crime of murder where self-defense has been introduced into the case. In Smart's case, he was tried under a statute making criminal "the killing of any person with malice aforethought, either express or implied." S.C.Code Ann. § 16–3–10 (Law. Co-op. 1976). The South Carolina Supreme Court has long defined "malice" as the intentional doing of a *wrongful* act, *without legal justification or excuse*. *State v. Foster*, 66 S.C. 469, 476, 45 S.E. 1, 4 (1903) (emphasis supplied). Self-defense, if made out, would amount to legal justification or excuse. The act would not be wrongful. Consequently the absence of self-defense, for federal constitutional purposes, must, even in 1981 or prior years, have been established by the prosecution beyond a reasonable doubt [1] for guilt of the crime to be established.

It is of utmost importance to realize that there are two different factors presented here for our consideration. One is known as the elements of the crime, the other is the burden of proof. In order to appreciate the difference between the two factors, it is necessary to understand the distinction between *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), and *Patterson v. New York*, 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977). In *Mullaney v. Wilbur*, the unanimous Supreme Court held unconstitutional Maine's practice of presuming malice and requiring a defendant to prove by a preponderance of the evidence that he killed in a sudden heat of passion based on adequate provocation in order to reduce intentional homicide from murder to manslaughter. In *Patterson*, the Supreme Court upheld a New

1. *See Patterson v. New York*, 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977); *Mullaney v. Wilbur*, 421 U.S. 684, 691–704, 95 S.Ct. 1881, 1886–1892, 44 L.Ed.2d 508 (1975); *In re Winship*, 397 U.S. 358, 361, 90 S.Ct. 1068, 1071, 25 L.Ed.2d 368 (1970).

York statute allowing a defendant to mitigate a charge of murder to manslaughter if he could prove by a preponderance of the evidence that he acted under extreme emotional disturbance for which there was reasonable explanation or excuse. According to the *Patterson* Court, the distinction between *Mullaney* and *Patterson* is based on the fact that Maine law, under consideration in *Mullaney*, had specified "malice" as an essential ingredient of murder. *Patterson*, 432 U.S. at 212–16, 97 S.Ct. at 2328–30. The *Patterson* Court reasoned that in Maine malice, which the state had to prove beyond a reasonable doubt, encompassed the absence of sudden heat of passion based on adequate provocation. *Id.* at 216, 97 S.Ct. at 2330. On the other hand, the New York statute did not use the term "malice"; therefore, in New York the absence of extreme emotional disturbance was not part of the definition of murder. Justice White was careful at the outset of the majority opinion in *Patterson* to point out that in New York causing a person's death with an intent to do so alone made out the crime of murder. "Malice aforethought is not an element of the crime." *Patterson*, 432 U.S. at 198, 97 S.Ct. at 2320.[2] *Mullaney*, therefore, was distinguished, but by no means overruled, in the *Patterson* case. *See Francis v. Franklin*, 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985) (citing *Mullaney* as good authority).

Moreover, up until the time (1967)[3] when the statute in *Patterson* came into existence, extreme emotional disturbance was simply not relevant to the crime of murder. Its proof or the lack of it did not constitute an element of the crime. The New York legislature, in enacting the statute, provided something new of benefit to the defendant not present before. The legislature was free to make such terms as it wished

so it could make extreme emotional disturbance something which the benefited defendant was required to prove as an affirmative defense. The legislature was free not to cast on the prosecution the entirely novel burden of demonstrating the absence of extreme emotional disturbance. *Patterson*, 432 U.S. at 207–08, 97 S.Ct. at 2325–26. In contrast, though Maine law placed the burden on the defendant of showing lack of malice, the presence of malice was traditionally an element of the crime of the murder in that state.[4] By the same token, since time immemorial, malice or lack of self-defense has been an ingredient of the crime of murder in South Carolina.

In both Ohio and South Carolina, state law has placed the burden of proof of self-defense by a preponderance of evidence upon the defendant, and the South Carolina prosecutor rests his case on that aspect of the matter. However, insofar as elements of the crime are concerned, there is a vital distinction, namely, the applicable difference as to the elements of the crime in the laws of Ohio and South Carolina that sets apart *Martin v. Ohio*, 480 U.S. 228, 107 S.Ct. 1098, 94 L.Ed.2d 267 (1987), on the one hand, and the instant case of *Smart v. Leeke*, on the other.

In South Carolina, the killing, even if intentional, in and of itself does *not* constitute a crime, especially the crime of murder. In order to make out a crime, it is necessary to demonstrate the combined effect of killing with malice. Since lack of self-defense is one aspect of malice, once self-defense has entered the case through presentation by the defense of some relevant evidence, the failure to prove malice beyond a reasonable doubt is fatal from the prosecution's point of view. Irrespective

---

**2.** In South Carolina things are just the other way. As in *Mullaney* "malice aforethought is an essential and indispensable element of the crime of murder." *Patterson*, 432 U.S. at 212–13, 97 S.Ct. at 2328–29.

**3.** *Patterson*, 432 U.S. at 218, 97 S.Ct. at 2331.

**4.** [M]alice, in the sense of the absence of provocation, was part of the definition of that crime. Yet malice, *i.e.*, lack of provocation,

was presumed and could be rebutted by the defendant only by proving a preponderance of the evidence that he acted with heat of passion upon sudden provocation. In *Mullaney* we held that however traditional this mode of proceeding might have been, it is contrary to the Due Process Clause as construed in *Winship*.
*Patterson*, 432 U.S. at 216, 97 S.Ct. at 2330.

of the state law on the subject, under *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), as an element of the crime, malice must be proved by the prosecution beyond a reasonable doubt.

In Ohio things are different. The crime of murder, under state law, is made out by the prosecutor when he or she shows the causing of death purposely and with prior calculation and design. In *Martin v. Ohio*, the existence of those elements was not disputed by the defendant. The prosecutor in Ohio is not required as part of his case-in-chief to demonstrate malice. Without the matter of malice being considered, the crime is established by the prosecution; the defendant has the burden, by a preponderance of evidence, of convincing the finder of fact that though he or she committed murder, it was excused because of self-defense. The dissenters in *Patterson v. New York* (Powell, Brennan, and Marshall, JJ.) and in *Martin v. Ohio* (Powell, Brennan, Marshall and Blackmun, JJ.) would not have even allowed the distinction the majorities made, but the important thing is that the distinction is here to be made. Self-defense negates an element of the crime of murder in South Carolina, whereas self-defense does not negate an element of the crime of murder in Ohio. The consequence is that, in the instant case, federal constitutional law casts the burden of proof beyond a reasonable doubt on the prosecution when the matter has become a factual one through introduction by the defense of some evidence of self-defense.

It is important not to confuse "elements of crime" with "burden of proof." Even in South Carolina, there is one important limitation. The burden of proof is on the prosecution as to lack of self-defense. If the defendant has failed to supply any credible evidence whatsoever of self-defense, the case becomes one where there is simply no proof whatever, one way or the other, so that a burden of *proof* cannot come into question. In such a case, there is a presumption of malice. *See State v. Rochester*, 72 S.C. 194, 200–01, 51 S.E. 687, 687

(1905). The state in such a case is excused from proving absence of self-defense because that element has not entered the case in any way. However, if it is introduced through the production of credible evidence, the presumption of malice—being a true presumption—entirely disappears and the matter becomes one to be proved or disproved by evidence. *See State v. Rochester*, 72 S.C. at 200–01, 51 S.E. at 687. The teaching of *In re Winship* is that, when there is present an issue of proof which goes to an element of the crime, the burden of proof beyond a reasonable doubt must be assumed by the prosecution.

It was pointed out in *Martin v. Ohio* that, under Ohio law, the "unlawfulness" of the defendant's actions related solely to the acts constituting the crime charged and not to the collateral question of whether there was or was not proper intent. 107 S.Ct. at 1103. However, in South Carolina, "wrongfulness" may relate to the defendant's *mens rea* and may well have to be proven by the prosecution beyond a reasonable doubt. It is not, however, necessary to enter that tangled patch of forestry, inasmuch as the absence of "legal cause or excuse" clearly encompasses the absence of self-defense. *See State v. Martin*, 216 S.C. 129, 134, 57 S.E.2d 55, 57 (1949) (self-defense constitutes a legal excuse for the killing of another).[5]

Hence, as the jury here was unequivocally and repeatedly instructed that the burden of proving self-defense by a preponderance of the evidence remained throughout upon the defendant, the district court's grant of a petition for a writ of *habeas corpus*, subject to prompt retrial, was proper and the issuance of the writ on that condition is affirmed.

It would perhaps have been tempting to rest decision simply on the fact that the instruction contained confusing elements stating on several occasions that the burden of proof beyond a reasonable doubt always rests on the prosecution and, with an equal degree of repetition, the opposite, that the burden as to self-defense is an

---

5. "There also is no dispute that self-defense historically is one of the primary justifications for

otherwise unlawful conduct." *Martin v. Ohio*, 107 S.Ct. at 1107.

affirmative one to be met by the defendant through production of a preponderance of the evidence.[6] However, it is not possible to rest comfortably on that ground, partly because *Martin v. Ohio* indicates that such an instruction could be clear enough not to mislead the jury. 107 S.Ct. at 1102 fn.**.

Moreover, there is no need to rest on that ground. On the basis of what has gone before in this opinion, the rationales of the Ohio case and the South Carolina case are clearly distinguishable. The South Carolina definition of the crime of murder includes language compelling the prosecution to prove malice (*i.e.*, lack of self-defense). *See Foster*, 66 S.C. at 476, 45 S.E. at 4. The Ohio statutory definition contains no such requirement of repudiation of self-defense in its definition.[7] Therefore, while Ohio law does not appear to violate due process, South Carolina law, when interpreted so as to place the burden of self-defense on a defendant, does.

■ The government argues, however, that, even if the jury charge in the instant case did not comport with the requirements of due process, the writ should not issue because the error was harmless. We disagree. In *Rose v. Clark*, 478 U.S. 570, 106 S.Ct. 3101, 3107–09, 92 L.Ed.2d 460 (1986), the Supreme Court held that the harmless error standard of *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) was applicable to jury instructions that unconstitutionally shifted the burden of persuasion with regard to intent. Under *Chapman*, error is harmless if, beyond a reasonable doubt, it did not contribute to the verdict obtained. 386 U.S. at 24, 87 S.Ct. at 828.

In the instant case, the defendant was found guilty of the murders of two men, Hardy Baxley and Leldon Myers, but not guilty of the murders of two women. Each of the victims had died of gunshot wounds, though some of them also had suffered knife wounds. The government introduced evidence that three of the victims had "A" type blood; the other victim and the defendant had "O" type blood. Both "O" and "A" type blood were found on the defendant's clothes when he was arrested. The defendant tried to flee from the police at the scene of the crime and escaped for a short period during the course of his trial. The taped conversations made shortly after the defendant's arrest, and apparently while he was intoxicated, contained numerous inconsistent statements from the defendant ranging from an admission of killing all four victims to an admission of only killing the two men in self-defense. The defendant also stated that the two female victims were murdered by one of the male victims. The government introduced testimony that someone had moved the male victims' bodies after they were shot. The state also presented evidence tending to show that none of the victims had fired a pistol on the day of the killings.

The defendant, on the other hand, introduced the testimony of Dr. Wendell Sowell. Dr. Sowell reviewed the reports of gunshot residue tests which were conducted on the victims and concluded that they had either fired or the victims had been holding a pistol when it was fired since the last time they had washed their hands. The defense also noted that the pistols allegedly used in the killings were owned by the two male victims. One of the male victims previously had been convicted of the murder of a policeman in Barnwell, South Carolina. The other was on parole from a life sentence for safecracking. The defense also asserted that the sexual relationship between one of the male victims and the young female victim was a cause of repulsion and aggravation to the defendant. The Department of Social Services had investigated an earlier report of such an alleged misconduct but filed no charges.

Clearly, there is sufficient evidence to support, as well as refute, the defendant's assertions of self-defense. In view of such

---

6. *See Thomas v. Leeke*, 725 F.2d 246 (4th Cir. 1984), *cert. denied*, 469 U.S. 870, 105 S.Ct. 218, 83 L.Ed.2d 148 (1984).

7. In *Martin*, the defendant was convicted of having "purposely, and with prior calculation and design, caus[ed] the death of another." 107 S.Ct. at 1100, *quoting* Ohio Rev.Code Ann. § 2903.01.

evidence, it cannot be said beyond a reasonable doubt that the error in jury instructions did not contribute to the final verdict. Therefore, the error was not harmless.

The judgment of the district court is, 677 F.Supp. 414 (D.S.C.1987), accordingly,

AFFIRMED.

WILKINS, Circuit Judge, dissenting:

In *Martin v. Ohio*, 480 U.S. 228, 107 S.Ct. 1098, 94 L.Ed.2d 267 (1987), the Supreme Court held that states may constitutionally require a defendant to affirmatively establish self-defense by a preponderance of the evidence as long as the government is required to prove all the elements of murder beyond a reasonable doubt. The majority attempts to evade this controlling precedent by distinguishing the Ohio statutory definition of aggravated murder involved in *Martin* from the definition of murder under South Carolina's statute. The result reached by the majority is contrary to *Martin* and to precedent of our circuit. I therefore respectfully dissent.

## I.

It has never been seriously questioned that the Constitution requires that the burden of proof be placed on the prosecution to establish guilt beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 361–62, 90 S.Ct. 1068, 1071–72, 25 L.Ed.2d 368 (1970). The Supreme Court explicitly declared in *Winship* that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *Id.* at 364, 90 S.Ct. at 1072.

Another "long-accepted rule was that it was constitutionally permissible to provide that various affirmative defenses were to be proved by the defendant." *Patterson v. New York*, 432 U.S. 197, 211, 97 S.Ct. 2319, 2327, 53 L.Ed.2d 281 (1977). But, unlike the reasonable doubt rule, there have been several challenges to the constitutionality of placing a burden on the defendant to prove certain affirmative defenses.

In *Leland v. Oregon*, 343 U.S. 790, 72 S.Ct. 1002, 96 L.Ed. 1302 (1952), the Court addressed the question of whether due process was violated by a state statute which required a defendant pleading insanity to establish the defense beyond a reasonable doubt. The defendant, who was charged with murder in the first degree, argued that the statute required him to prove his innocence by disproving the elements of the crime charged. The Court acknowledged that the jury might have found the defendant mentally incapable of the premeditation and deliberation required to prove first degree murder or the intent essential to both first and second degree murder, but not legally insane. However, the Court concluded that the state was "required to prove beyond a reasonable doubt every element of the crime charged." *Id.* at 794, 72 S.Ct. at 1005. Thus, despite some overlap of proof on the mental element essential to the offense and to the insanity defense, a state may constitutionally place the burden of proving the defense on a defendant.

In *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), the Court addressed the constitutionality of a Maine law which required a defendant charged with murder to rebut a presumption of malice and prove that he acted "in the heat of passion on sudden provocation" in order to reduce a charge of murder to manslaughter.[1] Two degrees of homicide existed under Maine law—murder and manslaughter. Murder was defined as the unlawful killing of a human being with malice aforethought, either express or implied, *id.* at 686 n. 3, 95 S.Ct. at 1883 n. 3 (quoting Me.Rev.Stat.Ann. tit. 17, § 2651 (1964)), and manslaughter as the unlawful killing of a human being "in the heat of passion, on sudden provocation, without express or implied malice aforethought," *id.* (quoting Me.Rev.Stat.Ann. tit. 17, § 2551 (1964)). The jury had been instructed, in accordance with Maine law, "that if the prosecution

---

**1.** Although not technically an affirmative defense case, see *infra*, a discussion of *Mullaney* is essential to a proper understanding of the development of the law in this area.

established that the homicide was both intentional and unlawful, malice aforethought was to be conclusively implied unless the defendant proved by a fair preponderance of the evidence that he acted in the heat of passion on sudden provocation." *Mullaney*, 421 U.S. at 686, 95 S.Ct. at 1883 (footnote omitted). The Court held that this instruction violated the due process mandate of *Winship* that the prosecution prove beyond a reasonable doubt every fact necessary to constitute the crime charged.

After *Mullaney* there was considerable doubt as to the constitutionality of requiring a defendant to prove any affirmative defense, except insanity,[2] because many urged, as did the defendant in *Patterson*, that:

> [T]he State may not permit the blameworthiness of an act or the severity of punishment authorized for its commission to depend on the presence or absence of an identified fact without assuming the burden of proving the presence or absence of that fact, as the case may be, beyond a reasonable doubt.

*Patterson v. New York*, 432 U.S. at 214, 97 S.Ct. at 2329 (footnote omitted). However, the Court rejected this interpretation and subsequently clarified the holding: "*Mullaney* ... held that a State must prove every ingredient of an offense beyond a reasonable doubt, and that it may not shift the burden of proof to the defendant by presuming that ingredient upon proof of the other elements of the offense." *Id.* at 215, 97 S.Ct. at 2329.

The Court squarely held that *Mullaney* should be classified as a presumption case, and therefore it offers little, if any, guidance on the issue of affirmative defenses. In *Mullaney*, as in other presumption cases, the state is improperly relieved of the burden of proving an essential element of the crime charged, and the burden is unconstitutionally shifted to the defendant to disprove the element. *See, e.g., Hankerson v. North Carolina*, 432 U.S. 233, 97 S.Ct. 2339, 53 L.Ed.2d 306 (1977). However, in affirmative defense cases, as here

and in *Martin*, the state bears the burden of proving every element of the crime charged, but the defendant is required to prove a separate issue which may or may not overlap with proof of the crime.

In *Patterson*, the Court faced the issue of the constitutionality of requiring a defendant charged with second-degree murder under New York law to prove the affirmative defense of extreme emotional disturbance. As in Maine, the state of New York made a distinction between murder and manslaughter. Second-degree murder required proof that the defendant intentionally killed another person. *Patterson*, 432 U.S. at 198 n. 2, 97 S.Ct. at 2321 n. 2 (quoting N.Y. Penal Law § 125.25 (McKinney 1975)). Manslaughter was defined as the intentional killing of another person "under circumstances which do not constitute murder because [the defendant] acts under the influence of extreme emotional disturbance." *Id.* (quoting N.Y. Penal Law § 125.20(2) (McKinney 1975)). Consistent with New York law the jury was instructed that the defendant had to prove his affirmative defense by a preponderance of the evidence. The Court held that the defense was constitutionally adequate, finding that it was comparable to the insanity defense because "it constitutes a separate issue on which the defendant is required to carry the burden of persuasion." *Patterson*, 432 U.S. at 207, 97 S.Ct. at 2325. The Court expressly stated:

> We ... decline to adopt as a constitutional imperative, operative countrywide, that a State must disprove beyond a reasonable doubt every fact constituting any and all affirmative defenses.... Proof of the nonexistence of all affirmative defenses has never been constitutionally required; and we perceive no reason to fashion such a rule in this case and apply it to the statutory defense [of extreme emotional disturbance].

*Id.* at 210, 97 S.Ct. at 2327.

## II.

More recently, in *Martin v. Ohio* the Court examined the same question raised

---

**2.** The Court reiterated the constitutional permissibility of placing the burden on defendants to prove insanity by dismissing the appeal in *Riv-*

*era v. Delaware*, 429 U.S. 877, 97 S.Ct. 226, 50 L.Ed.2d 160 (1976).

here of whether due process is violated by placing upon a defendant, who is charged with murder, the requirement of proving self-defense as an affirmative defense.[3] Martin argued, as does Smart, that placing the burden on her to prove the affirmative defense impermissibly required her to negate one of the elements of murder. The Court in *Martin* rejected this contention and we are compelled to do likewise here.

### A.

Martin was convicted of the unlawful act of aggravated murder which is defined under Ohio law as "purposely, and with prior calculation and design, caus[ing] the death of another." Ohio Rev.Ann. § 2903.01(A) (Anderson 1987). Smart was convicted of murder which is defined under South Carolina law as "the unlawful killing of another with malice aforethought, either express or implied," *State v. Johnson*, 291 S.C. 127, 128, 352 S.E.2d 480, 481 (1987) (citing S.C. Code Ann. § 16–3–10 (Law. Co-op.1976)), malice being further defined as the intentional doing of a wrongful act, without just cause or excuse. *State v. Foster*, 66 S.C. 469, 475, 45 S.E. 1, 4 (1903).

Martin asserted that she acted in self-defense which under Ohio law is an affirmative defense justifying and rendering lawful otherwise unlawful conduct. *State v. Davis*, 8 Ohio App.3d 205, 456 N.E.2d 1256, 1261 (1982); *State v. Morris*, 8 Ohio App.3d 12, 455 N.E.2d 1352, 1359 (1982). Similarly, Smart also asserted self-defense, a complete defense constituting an excuse or justification for murder under South Carolina law. *State v. Martin*, 216 S.C. 129, 133, 57 S.E.2d 55, 57 (1949). Pursuant to state law, the burden was placed on Martin to prove the following elements of self-defense by a preponderance of the evidence:

(1) [T]he defendant was not at fault in creating the situation giving rise to the argument;

(2) [T]he defendant had an honest belief that she was in imminent danger of death or great bodily harm and that her only means of escape from such danger was in the use of such force; and

(3) [T]he defendant must not have violated any duty to retreat or avoid danger.

*Martin v. Ohio*, 480 U.S. at 230, 107 S.Ct. at 1100, 94 L.Ed.2d at 272. Likewise, in accordance with the law of South Carolina at that time, the jury was instructed that Smart was required to prove four similar elements by a preponderance of the evidence:

(1) [H]e was without fault in bringing on the difficulty.

(2) [H]e actually believe[d] he was in imminent danger of losing his life or of sustaining serious bodily injury or that he actually was in such imminent danger of losing his life or of sustaining serious bodily injury.

(3) [I]f his defense is based upon his belief of imminent danger, that a reasonable prudent man of ordinary firmness and courage would have entertained the same belief, or if his defense is based upon his being in actual and imminent danger, that the circumstances were such as would warrant a man of ordinary prudence, firmness and courage to strike a fatal blow to save himself from serious bodily harm, or losing his life.

(4) He had no other means of avoiding the danger of losing his life or sustaining serious bodily injury than to act as he did in the particular instance.

*See State v. Davis*, 282 S.C. 45, 317 S.E.2d 452 (1984).[4]

---

**3.** The Court previously declined to address the issue in *Hankerson v. North Carolina*, 432 U.S. at 237 n. 3, 245, 97 S.Ct. at 2342 n. 3, 2346 and *State v. Moran*, No. 45879 (Ohio App. Oct. 27, 1983) [available on WESTLAW, 1983 WL 2712], *cert. denied*, 469 U.S. 948, 105 S.Ct. 350, 83 L.Ed.2d 285 (1984).

**4.** In *Davis*, the South Carolina Supreme Court instructed the trial courts to proceed with a new instruction in self-defense cases. *Davis*, 282

S.C. at 46, 317 S.E.2d at 453. Although the instruction relieves the defendant of the burden of proving self-defense by a preponderance, the state supreme court rejected the defendant's assertion in *Davis* that the affirmative defense unconstitutionally shifted the burden of proof as it previously existed. The court relied upon its previous holding in *State v. Bolton* that "[n]owhere in *Mullaney* did the Court hold that requiring a defendant to prove self-defense affirmatively, denies him due process." 266 S.C.

The majority holds that due process was violated by placing the burden on Smart to prove self-defense because it amounts to legal justification or excuse which negates malice and consequently the absence of self-defense must be established by the state beyond a reasonable doubt. This reasoning is contrary to the analysis in *Martin* where the Court held that overlap of proof between elements of murder and self-defense was constitutionally permissible, and did not prohibit the state from placing the burden on the defendant to prove the defense. Rather, the critical focus was whether the jury instructions unconstitutionally relieved the state of its burden.

### B.

In *Martin*, the Court recognized that self-defense requires proof of an honest belief of imminent danger of death or serious bodily harm and that generally evidence offered to support this element may negate a purposeful killing by prior calculation and design.[5] As Justice Powell stated in his dissent: "Under Patterson, this conclusion should suggest that Ohio is precluded from shifting the burden as to self-defense." *Martin*, 480 U.S. at 239, 107 S.Ct. at 1105, 94 L.Ed.2d at 278. However, the Court held that it was permissible to require Martin to prove self-defense because

"Ohio does not shift to the defendant the burden of disproving any element of the state's case." *Id.* 480 U.S. at 234, 107 S.Ct. at 1102, 94 L.Ed.2d at 274.

The same must be said here since the cases are fundamentally indistinguishable. While the majority dwells on the fact that malice is defined under South Carolina law as acting wrongfully without justification or excuse and that self-defense constitutes justification and excuse, this preoccupation with semantics is unwarranted. I perceive little distinction between Ohio law which provides that unlawfulness is subsumed in the elements constituting murder and South Carolina law pursuant to which unlawfulness is an element of murder. Likewise, there is no fundamental difference between murder under Ohio and South Carolina law even though one expressly includes in its definition of murder the element of malice aforethought—intentional wrongful conduct without just cause or excuse—while another does not. For regardless of how a state may word the definition, a basic concept of criminal law is that a homicide does not constitute the crime of murder unless it is unjustified or unexcused. W. LaFave & A. Scott, Handbook on Criminal Law § 68 (1972).

### C.

Whatever the merits of this "elemental" analysis, the majority of the Court in *Mar-*

444, 449, 223 S.E.2d 863, 866 (1976). In the interim between *Bolton* and *Davis,* the court on at least six occasions rejected arguments that the affirmative defense was unconstitutional. *See State v. Finley,* 277 S.C. 548, 290 S.E.2d 808 (1982); *State v. Griffin,* 277 S.C. 193, 285 S.E.2d 631 (1981); *State v. Linder,* 276 S.C. 304, 278 S.E.2d 335 (1981); *State v. Crocker,* 272 S.C. 344, 251 S.E.2d 764 (1979); *State v. McDowell,* 272 S.C. 203, 249 S.E.2d 916 (1978); *State v. Atchison,* 268 S.C. 588, 235 S.E.2d 294, *cert. denied,* 434 U.S. 894, 98 S.Ct. 273, 54 L.Ed.2d 181 (1977).

In *State v. Glover,* 284 S.C. 152, 326 S.E.2d 150, *cert. denied,* 471 U.S. 1068, 105 S.Ct. 2147, 85 L.Ed.2d 503 (1985), the court again reiterated the constitutionality of the affirmative defense. However, after emphasizing its disagreement with the holding in *Thomas v. Leeke,* 725 F.2d 246 (4th Cir.), *cert. denied,* 469 U.S. 870, 105 S.Ct. 218, 83 L.Ed.2d 148 (1984), see discussion *infra,* the court stated that it had "cured the purported constitutional violation complained

of by the Fourth Circuit," and that "the charge approved in *Davis* shall be applied in all cases tried subsequent to the date of that decision, so long as contemporaneous objection was made at trial." *Id.* at 154, 326 S.E.2d at 151.

Finally, in *State v. Bellamy,* 293 S.C. 103, 359 S.E.2d 63 (1987), the court reversed a murder conviction for failure to comply with the *Davis* charge. The court refused to address the state's contention that the charge was constitutionally adequate pursuant to *Martin v. Ohio,* instead finding that "it does not comport with South Carolina law." *Id.* at 105, 359 S.E.2d at 65.

5. More realistically, only in the rarest case will proof of an honest belief of imminent danger *not* negate prior calculation and design. Since the Court validated the Ohio scheme under which overlap of proof will exist in virtually all murder cases where self-defense is asserted, there is no logical reason why the South Carolina scheme should be invalidated because there will be overlap in every case where self-defense is asserted to a charge of murder.

*tin* did not rely solely on that point in upholding the placement of the burden on the defendant to prove the affirmative defense. 480 U.S. at 234, 107 S.Ct. at 1102, 94 L.Ed.2d at 275. Rather, more importantly, the Court stressed that while the jury was instructed that the defendant carried the burden of proving self-defense by a preponderance of the evidence, it was also instructed that the state was required to prove each element of aggravated murder beyond a reasonable doubt. The Court stated:

> It would be quite different if the jury had been instructed that self-defense evidence could not be considered in determining whether there was a reasonable doubt about the state's case, i.e., that self-defense evidence must be put aside for all purposes unless it satisfied the preponderance standard. Such instruction would relieve the state of its burden and plainly run afoul of Winship's mandate. The instructions in this case could be clearer in this respect, but when read as a whole, we think they are adequate to convey to the jury that all of the evidence, including the evidence going to self-defense, must be considered in deciding whether there was a reasonable doubt about the sufficiency of the state's proof of the elements of the crime.

*Id.* 480 U.S. at 233–34, 107 S.Ct. at 1102, 94 L.Ed.2d at 274 (citations omitted). Justice Powell recognized this reasoning to be the crux of the Court's holding when he articulated in his dissent: "The Court thus seem[ed] to conclude that as long as the jury is told that the state has the burden of proving all elements of the crime, the overlap between the offense and the defense is immaterial." *Id.* 480 U.S. at 239, 107 S.Ct. at 1105, 94 L.Ed.2d at 278.

Reading the jury instructions here as a whole, it is clear that the trial judge repeatedly instructed that the state bore the burden of proving each element of the offense charged beyond a reasonable doubt. And importantly, the jury was not restricted from considering the self-defense evi-

dence "in deciding whether there was a reasonable doubt about the sufficiency of the state's proof of the elements of the crime." *Id.* 480 U.S. at 234, 107 S.Ct. at 1102, 94 L.Ed.2d at 274.

### D.

In *Martin* the Court clearly rejected the argument espoused by the majority that simply because one may assert that the particular definition of murder in question can be read as overlapping with the elements of self-defense, then the affirmative defense is necessarily unconstitutional. Justice Powell insisted that the clear implication of *Patterson* was that "when an affirmative defense *does* negate an element of the crime, the state may not shift the burden." *Id.* 480 U.S. at 237, 107 S.Ct. at 1104, 94 L.Ed.2d at 277. But, whatever the merits of such a contention, the Court has clearly spoken and its result is binding on our decision today.

### III.

Moreover, the majority ignores precedent of this circuit which has reiterated on several occasions the constitutionality of placing the burden of proving self-defense on a defendant and instead emphasizes the vacated panel decision in *Griffin v. Martin*, 785 F.2d 1172 (4th Cir.), *reh'g en banc granted*, 795 F.2d 22 (4th Cir.1986) (denial of habeas corpus relief affirmed by an equally divided court), *cert. denied*, 919 U.S. 480, 107 S.Ct. 1376, 94 L.Ed.2d 691 (1987), and the questionable applicability of *Mullaney v. Wilbur*.[6]

In *Thomas v. Leeke*, 725 F.2d 246 (4th Cir.), *cert. denied*, 469 U.S. 870, 105 S.Ct. 218, 83 L.Ed.2d 148 (1984), this court held that a jury charge similar to the one here was unconstitutionally contradictory and confusing. However, as the majority acknowledges, under *Martin*, the instruction would no longer be considered unclear and misleading. And, as Judge Hall discussed in his dissent in *Thomas*, 725 F.2d at 252–

---

**6.** The majority in *Martin* elected not to cite the *Mullaney* decision, thereby implicitly questioning its applicability.

54, the court has previously upheld as constitutional, under South Carolina law, placement of the burden of proving the affirmative defense of self-defense on a defendant, *Maxey v. Martin,* 577 F.2d 735 (4th Cir.1978) (Table), as well as under Virginia law, *Baker v. Muncy,* 619 F.2d 327 (4th Cir.1980); *Frazier v. Weatherholtz,* 572 F.2d 994 (4th Cir.), *cert. denied,* 439 U.S. 876, 99 S.Ct. 215, 58 L.Ed.2d 191 (1978).

## IV.

Historically, the burden of proving all affirmative defenses—"indeed, 'all circumstances of justification, excuse, or alleviation'—rested on the defendant.... This was the rule when the Fifth Amendment was adopted, and it was the American rule when the Fourteenth Amendment was ratified." *Patterson,* 432 U.S. at 202, 97 S.Ct. at 2322 (citations omitted); *see also Martin,* 480 U.S. at 235, 107 S.Ct. at 1103, 94 L.Ed.2d at 275. After the federal government assumed the burden of proving the sanity of a defendant, *Davis v. United States,* 160 U.S. 469, 16 S.Ct. 353, 40 L.Ed. 499 (1895), many jurisdictions also undertook the burden of proving sanity and disproving other affirmative defenses, even though the ruling of *Davis* was not constitutionally grounded, *Leland v. Oregon,* 343 U.S. at 797, 72 S.Ct. at 1006. Prior to 1984 Ohio and South Carolina were the only two remaining states which placed the burden of proving self-defense on the defendant asserting it.[7] And as the Court further noted, the question of the constitutionality of this practice should not be resolved "by cataloging the practices of other States." 480 U.S. at 236, 107 S.Ct. at 1103, 94 L.Ed.2d at 276.

Notwithstanding the widespread changes in other states, the Court in *Martin* found that despite the overlap of proof of murder and self-defense, it was constitutionally permissible to place the burden of proving self-defense on the defendant as long as the state bore the ultimate burden of proving all the elements of murder beyond a reasonable doubt. In light of this clear holding, and the prior precedent of this circuit, Smart's jury instructions plainly satisfied due process mandates. The issuance of the writ of habeas corpus should therefore be vacated.

---

7. In *Martin,* the Court noted that "all but two of the States, Ohio and South Carolina, have abandoned the common law rule and require the prosecution to prove the absence of self-defense when it is properly raised by the defendant." 480 U.S. at 236, 107 S.Ct. at 1103, 94 L.Ed.2d at 275–76. At the time *Martin* was issued, South Carolina had also abandoned the common law rule. *State v. Davis,* 282 S.C. 45, 317 S.E.2d 452 (1984). *See* note 3.